UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PAUL WARTAK JR., on behalf of ) | |
| PAUL A. WARTAK, deceased, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17-cv-205 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner for Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Paul Wartak Jr., on behalf of Paul A. Wartak, deceased, on May 4, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Paul A. Wartak, filed applications for Disability Insurance Benefits and Supplemental Security Income on October 27, 2011, alleging a disability onset date of January 1, 2010. (Tr. 10). The Disability Determination Bureau denied Wartak's applications on December 20, 2011, and again upon reconsideration on May 30, 2012. (Tr. 10). Wartak subsequently filed a timely request for a hearing on June 28, 2012. (Tr. 10). A video hearing was held on August 9, 2013, before Administrative Law Judge (ALJ) Henry Kramzyk, and the ALJ issued an unfavorable decision on September 13, 2013. (Tr. 10-22). Vocational Expert (VE) Thomas A. Gusloff testified at the hearing. (Tr. 10). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Wartak appealed to this court, and this court remanded the matter on March 8, 2016. (Tr. 558-87).

On September 20, 2016, a hearing was held before ALJ Romona Scales, and the ALJ issued an unfavorable decision on January 4, 2017. (Tr. 461-73). VE Clifford M. Brady appeared at the hearing. The ALJ determined that Wartak was not under a disability, as defined in the Social Security Act, from January 1, 2010 through the date of the decision, January 4, 2017, thereby rendering it the Agency's final decision for judicial review. (Tr. 473). On February 16, 2018, Wartak filed a stipulation of partial dismissal. The court has dismissed Wartak's claim under 42 U.S.C. § 1383(c)(3) for review of the Commissioner's final decision denying Wartak's application for Supplemental Security Income under Title XVI of the Social Security Act.

Wartak met the insured status requirements of the Social Security Act through September 30, 2014. (Tr. 463). On January 4, 2017, the ALJ issued an unfavorable decision and made findings as to each of the steps in the five-step sequential analysis. (Tr. 461-73). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Wartak had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (Tr. 463).

At step two, the ALJ determined that Wartak had the following severe impairments: left eye blindness, hypertension, diabetes, chronic obstructive pulmonary disease (COPD), obesity, schizoid personality disorder, major depressive disorder, and anxiety. (Tr. 463). The ALJ indicated that she considered all the medically determinable impairments, in combination, when assessing Wartak's residual functional capacity and when determining if his impairments met or equaled a listed impairment. (Tr. 463-64).

At step three, the ALJ concluded that Wartak did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 464). The ALJ indicated that no treating physician or examining physician indicated diagnostic findings that would satisfy any listed impairment. (Tr. 464). Moreover, the ALJ considered Wartak's obesity and diabetes in conjunction with his other severe impairments and concluded that none of the listings were met or medically equaled a listed impairment. (Tr. 464). The ALJ considered Wartak's mental impairments, singly and in combination, according to the criteria in Listings 12.03, 12.04, 12.06, and 12.08. (Tr. 464). Accordingly, the ALJ determined that the severity of Wartak's mental impairments did not meet or medically equal the listings. (Tr. 464).

In finding that Wartak did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 465). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 465).

The ALJ determined that Wartak had a mild restriction in activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence, or pace. (Tr. 465). The ALJ found that Wartak had no episodes of decompensation which were of extended duration. (Tr. 465). Because Wartak did not have two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 466). Additionally, the ALJ found that Wartak did not satisfy the paragraph C criteria. (Tr. 466).

After consideration of the entire record, the ALJ then assessed Wartak's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to frequent stoop, couch, crawl, kneel, balance, and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolding; limited to frequent near and far acuity; should avoid work that involves objects moving from left to right due to visual defects in the left eye and limits in depth perception in the left eye but otherwise can read at least newspaper print or greater, avoid hazards in the workplace, and handle small, medium, and large objects; should avoid concentrated exposure to loud noise; should avoid exposure to hazards such as slippery, wet, uneven surfaces, moving machinery, or unprotected heights; should avoid concentrated exposure to extreme temperatures and vibration; can understand, remember, and carry out work tasks and instructions without limitations; can maintain adequate attention and concentration to work tasks and instructions; limited to occasional and superficial contact with coworkers and supervisors; limited to incidental contact with general public; requires work free of fast paced production and quota; works best independently of others or in smaller teams of three or four; and can manage the changes associated within a routine work environment.

(Tr. 466). The ALJ explained that in considering Wartak's symptoms she followed a two-step process. (Tr. 467). First, she determined whether there was a physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Wartak's pain or other symptoms. (Tr. 467). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Wartak's functioning. (Tr. 467). The ALJ determined that Wartak's medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 467). However, Wartak's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 467).

At step four, the ALJ found that Wartak was unable to perform any past relevant work. (Tr. 471). Considering Wartak's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including hand packager (135,000 jobs nationally), production helper (36,500 jobs nationally), and assembler (38,300 jobs nationally reduced by 20 percent). (Tr. 472). The ALJ found that Wartak had not been under a disability, as defined in the Social Security Act, from January 1, 2010 through the date of this decision, January 4, 2017. (Tr. 473).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job

experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Wartak has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand for additional proceedings. In his appeal, Wartak has argued that the ALJ: (1) failed to follow the court's prior order, requiring reversal; (2) did not identify or rely on a supporting record basis to find that Wartak could perform the exertional requirements of medium work; (3) failed to properly weigh the opinion evidence; and (4) failed to properly assess his subjective symptoms.

On December 16, 2011, Dr. Ann Lovko, Ph.D., completed a Mental Residual Functional Capacity Assessment Form. She opined in the "Summary Conclusions" (Section I) of the assessment form that Wartak had moderate limitations in his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 320). In the Functional Capacity Assessment (Section III), Dr. Lovko stated that Wartak "can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors." (Tr. 321).

On March 8, 2016, the court remanded this matter "because the ALJ did not discuss the moderate limitations from Section I in formulating the RFC, the Court cannot determine if the ALJ considered whether all four of the moderate limitations were accommodated in Dr. Lovko's Step III assessment. Remand is thus required on this issue." Wartak has argued that on remand the ALJ again did not discuss the four moderate limitations which Dr. Lovko found when formulating the RFC. Therefore, Wartak contends that the ALJ has ignored this court's finding.

7

The Commissioner has acknowledged that the ALJ did not specifically discuss the four moderate limitations found by Dr. Lovko in Section I and did not discuss whether the Section I assessment was consistent with the Section III assessment. However, the Commissioner contends that the omission was excusable because the ALJ addressed the main issue in the court's remand order. Specifically, the court ordered that the ALJ form a logical bridge between the evidence and the RFC and that the ALJ address the court's concern regarding the limitation on superficial contact.

The court previously held that the ALJ had not built a logical bridge between the evidence and the RFC, thus remand was required. The court discussed the moderate limitations from Section I found by Dr. Lovko and the ALJ's failure to include those moderate limitations in the RFC discussion, and possibly the RFC itself. However, the court indicated that the primary basis for reversal and remand was that the ALJ failed to analyze how the limitation in the RFC to "occasional" contact with coworkers and supervisors accommodated Dr. Lovko's limitation in the narrative assessment in Section III to "superficial" contact.

In the instant matter, the ALJ assigned some weight rather than great weight to Dr. Lovko's Section III opinion. The ALJ indicated that the record supported a finding that Wartak was moderately limited in social interactions and that he should have no more than superficial contact with coworkers and supervisors. (Tr. 470). Also, the ALJ found that Wartak was capable of superficial contact with coworkers and supervisors only on an occasional, rather than an ongoing basis. (Tr. 470). Therefore, the ALJ assigned a more restrictive RFC than Dr. Lovko's Section III opinion. As previously found as error, the ALJ has accounted for the quality or extent of the contact by limiting Wartak to superficial contact, rather than just the quantity of time by limiting Wartak to occasional contact. Even though the ALJ did not specifically discuss

8

the four moderate limitations opined by Dr. Lovko in Section I as required in the remand order, she addressed the court's primary basis for remand and reversal. Therefore, the court will proceed with Wartak's additional arguments.

Wartak has argued that the ALJ did not identify evidence from the record to support the RFC finding. Specifically, Wartak contends that the ALJ did not rely on a qualified medical opinion in finding that he could perform a full range of work at all exertional levels. Wartak has indicated that the ALJ discounted the opinions of all his treating providers and that the ALJ did not adopt the opinions of the non-examining Agency reviewers. Therefore, Wartak asserts that the ALJ created an evidentiary deficit.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence— including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-

9

8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ assigned some weight to the opinions of the State agency medical consultants. However, the State agency consultants only assessed part of the record. Next, the ALJ assigned little weight to the opinions of Wartak's treating providers, Mahendra Patel, M.D., Silvia

Villagomez, RN-NPC, and Dr. Ilesh Kurani.  An ALJ is not required to rely solely on medical opinions to determine the RFC.  *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians).  The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ.  *See* **20 C.F.R. § 404.1527(e)(2)**.

The ALJ found that Wartak retained the capacity for a range of work at all exertional levels but with the following nonexertional limitations:

> could frequently stoop, couch, crawl, kneel, balance, and climbing of ramps and stairs; could not climb of ladders, ropes, or scaffolding; limited to frequent near and far acuity; should avoid work that involves objects moving from left to right due to visual defects in the left eye and limits in depth perception in the left eye but otherwise can read at least newspaper print or greater; should avoid concentrated exposure to loud noise; should avoid exposure to hazards such as slippery, wet, uneven surfaces, moving machinery, or unprotected heights; and should avoid concentrated exposure to extreme temperatures and vibration.

The VE testified that a person with that RFC could perform medium unskilled work including hand packager, production helper, and assembler.  (Tr. 521-23).  The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  SSR 83-10, at *6.

Wartak has argued that the ALJ failed to provide a basis for the finding that he had the ability to stand and walk 6 hours during an 8 hour workday given the combined impact of his obesity and knee arthritis. The ALJ considered Wartak's obesity individually, as well as in combination with all of his other impairments, in finding that he was limited to frequent stoop, couch, crawl, kneel, balance, and climbing of ramps and stairs, but that he could not climb ladders, ropes, or scaffolding. Moreover, the ALJ indicated that she considered that Wartak did not have pedal edema, swelling or any deformities in his extremities, and routinely displayed normal strength and gait. (Tr. 468).

However, the ALJ did not discuss the x-ray findings of knee degeneration, knee pain and tenderness, or problems with knee movement. (Tr. 749, 763-64, 776). The Commissioner has acknowledged that the ALJ did not specifically discuss Wartak's knee impairment. Because obesity may exacerbate pain and limitations from arthritis affecting weight-bearing joints, the ALJ's failure to address obesity in combination with Wartak's arthritic changes in the knee is an error that is potentially dispositive and could alter the RFC. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002) (recognizing that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."); ***Barnett v. Barnhart,*** 355 F.3d 1065, 1068 (7th Cir. 2004) (noting "[e]ven if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both.").

Wartak also takes issue with the ALJ's failure to address the cumulative effect of his obesity and chronic obstructive pulmonary disorder. Wartak contends that the ALJ's decision did not explain how he could lift and carry 25 pounds more than 5 hours during the workday.

12

Again, the Commissioner has not addressed this argument. Wartak contends that the ALJ discounted his chronic obstructive pulmonary disorder by noting that his lungs were clear with normal breath sounds. (Tr. 468). However, Wartak has indicated that the ALJ ignored findings of lung congestion and rhonchi. (Tr. 741, 750). Moreover, Wartak asserts that the ALJ failed to address his testimony that he got fatigued and took naps or rested, as required by SSR 96-8p. "The RFC [residual functional capacity] assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." ***Denton v. Astrue***, 596 F.3d 419, 425 (7th Cir. 2010). Therefore, the court can be sure that the final determination reflects the ALJ's assessment of all the evidence in the record.

Though the RFC is a legal determination for the ALJ to make, it must be supported by substantial evidence, and the ALJ has failed to identify the evidence supporting her decision to find that Wartak was capable of standing or walking for approximately 6 hours in an 8 hour workday and lifting or carrying objects weighing up to 25 pounds. Therefore, the court cannot trace her reasoning. An ALJ must "articulate at some minimal level her analysis of the evidence" to permit an informed review. ***Zurawski v. Halter***, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). An ALJ cannot ignore an entire line of evidence "in the absence of an explicit and reasoned rejection." ***Zblewski v. Schweiker***, 732 F.2d 75, 78-79 (7th Cir. 1984). Rather, it is "absolutely essential" that the ALJ "articulate reasons . . . for crediting or rejecting particular sources of evidence." ***Zblewski***, 732 F.2d at 79.

On remand, the ALJ should discuss Wartak's obesity and the combined impact on his knee impairment and chronic obstructive pulmonary disorder. Also, the ALJ should address whether Wartak's symptom-related functional limitations and restrictions, i.e., fatigue can or cannot reasonably be accepted as consistent with the medical evidence.

Next, Wartak has argued that the ALJ failed to properly weigh the opinion evidence. Wartak contends that the ALJ erred in discounting the opinions of his treating physicians, Dr. Mahendra Patel, M.D. and Dr. Ilesh Kurani. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting

14

evidence of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. ***Moore v. Colvin***, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing ***Similia v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* ***Punzio***, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." ***Scrogham v. Colvin***, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

The ALJ's decision indicated that she assigned little weight to Drs. Patel and Kurani because their "opinions are simply not supported by the objective evidence in the record, including their own treatment notes." (Tr. 470). The ALJ provided citations to evidence in the record that noted normal exam findings. For example, the ALJ noted that Wartak had normal visual fields and normal acuity in his right eye without correction; routinely he had no pedal edema, swelling, or any deformities in his extremities; consistently been neurologically intact,

15

with full strength normal sensation, and normal reflexes in his bilateral upper and lower extremities; full range of motion; normal gait; and his lungs have been clear to auscultation and percussion with normal breath sounds. (Tr. 471).

An ALJ must first determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where she applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ uses these factors to determine exactly what weight to assign to the opinion. This process consists of two "separate and distinct steps." *Williams v. Berryhill*, 2018 WL 264201, at *3 (N.D. Ill. Jan. 2, 2018). The court acknowledges that an ALJ need not explicitly mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed.Appx. 951, 959 (7th Cir. 2013)

In the instant matter, the ALJ failed to evaluate the opinions under the regulatory factors. Rather, the ALJ only pointed to medical findings that did not support Drs. Patel and Kurani's opinions, and therefore only considered the consistency with the records as a whole. Moreover, the ALJ has not articulated what inconsistencies she found in the record. The court is unable to know what other factors the ALJ accounted for when she assigned little weight to Drs. Patel and Kurani's opinions. The ALJ has failed to construct the necessary and logical bridge from the evidence to her conclusion.

Wartak also has argued that the ALJ erred in improperly addressing his symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th

16

Cir. 2013). On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." The Social Security Administration clarified that Social Security Ruling 16-3p only applies when the ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date. *See* Notices, SSR 16-3p**,** 2017 WL 4790249 (Oct. 25, 2017).

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9.

In assessing Wartak's symptoms, the ALJ found that "the symptoms were not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 467). Wartak has argued that the ALJ applied the incorrect legal standard. The standard for evaluating allegations about symptoms is that the ALJ must determine whether those allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence."

17

**20 C.F.R. § 416.929(a).** The ALJ demanded in this case that allegations be "entirely consistent" with the medical and other evidence, which is a different, more rigorous standard. *Minger v. Berryhill,* 307 F.Supp.3d 865, 871 (N.D. Ill. 2018). However, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).

Wartak has argued that the ALJ did not explain what symptoms she was crediting or rejecting. Therefore, he contends that the ALJ violated SSR 96-8p and SSR 16-3p. SSR 96-8 requires: "The RFC [residual functional capacity] assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Similarly, SSR 16-3p requires: the ALJ to "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." In sum, the ALJ may not disregard an individual's statements about symptoms solely based on objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *5. The Commissioner has not addressed either of the above arguments.

The ALJ indicated that Wartak's treatment was rather sparse. (Tr. 469). The ALJ acknowledged that Wartak indicated that he lacked insurance and funds for treatment, and often distrusted doctors. The ALJ determined that if Wartak's impairments were as limiting as he suggested, the ALJ expected him to seek out alternative, less expensive treatment. (Tr. 469). The ALJ "is not free to base his symptom evaluation on Plaintiff's lack of medical care while omitting any discussion of evidence about Plaintiff's reasons for not seeking treatment." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (Where ALJ discredited claimant's testimony based on a lack of treatment but overlooked evidence about his reasons, the "failure to

explore [the] evidence was a legal error."); *see also* **Craft v. Astrue**, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ must not draw inferences about a claimant's condition from a failure to seek care unless ALJ has explored claimant's explanations as to lack of medical care). The ALJ explored Wartak's reasoning for his sparse treatment. However, the ALJ's decision failed to acknowledge that Wartak sought free mental health treatment and exhausted all of his allowable free visits. Also, the ALJ did not discuss the free or low-cost medical services available, as mandated in SSR 16-3p(2)(d). *See* **Cannata v. Berryhill,** 2018 WL 3574753, at *3 (N.D. Ill. 2018).

Moreover, the court previously noted that the ALJ did not evaluate the credibility findings from Dr. Neal and Dr. Walters. Dr. Neal found Wartak credible. (Tr. 316). Previously, the court indicated that on remand the ALJ would have an opportunity to explain the weight given to the Dr. Neal's credibility findings. However, in the instant matter the ALJ failed to address Dr. Neal's opinion that Wartak was credible. Considering the omission by the ALJ and given that this matter is being remanded on different issues, the ALJ will have the opportunity to reevaluate Wartak's symptom evaluation pursuant to SSR 16-3p on remand.

Wartak has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 24th day of September, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge